5 F.3d 545
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Darrell CARD, Plaintiff-Appellant,
v.
HERCULES INCORPORATED and John Does I-X, Defendants-Appellees.
 No. 92-4169.
 United States Court of Appeals, Tenth Circuit.
 Aug. 19, 1993.
 
 Before McKAY, Chief Judge, SETH, and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Darrell Card brought this action against his former employer, defendant-appellee Hercules, Incorporated, under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-634, and section 510 of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1140. The complaint also stated causes of action under state law for breach of implied employment contract and public policy wrongful discharge.[1] The district court granted summary judgment to Hercules on plaintiff's ADEA and ERISA claims. We affirm.
 
 
 3
 We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). We must review the evidence in a light most favorable to the nonmoving party. Id. "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics, 912 F.2d at 1241.
 
 
 4
 Plaintiff had worked for numerous employers during his engineering career. At the time plaintiff was hired by Hercules as a manufacturing engineer in January 1984, he had been employed with Ford, Bacon, and Davis in Salt Lake City for approximately ten years. When he made this last job change, plaintiff was fifty-seven years old. Five years later, at age sixty-two, Hercules terminated plaintiff's employment as part of a reduction-in-force (RIF). Plaintiff contends that his selection for termination was influenced by his age and Hercules' desire to limit his retirement benefits. Plaintiff claims that Hercules continued to advertise for and hire engineers following this RIF, but refused to consider plaintiff for the open positions. He further asserts that Hercules subsequently hired several manufacturing engineers who were younger than plaintiff.
 
 
 5
 In response, Hercules contends that the RIF was an economic necessity, that plaintiff was among thirty-nine employees who were terminated in this workforce reduction, and that plaintiff's selection for layoff was a result of his low seniority and the elimination of the Facilities Planning Group of which plaintiff was a member. Hercules denies that plaintiff's age or benefits status were in any way influential in its decision. As to the engineers hired by Hercules subsequent to plaintiff's termination, although admittedly younger, all were hired at a level lower than that held by plaintiff. In addition, Hercules asserts, and the recently hired engineers confirm in supporting affidavits, see Appellant's App. at 38-59, that in addition to being hired for lower paying positions, all those hired had specialized computer and recent "hands on" engineering experience which plaintiff does not possess.
 
 ADEA Claim
 
 6
 "The framework for assessing the evidence in an age discrimination case parallels that applicable in a Title VII case." Spulak v. K Mart Corp., 894 F.2d 1150, 1153 (10th Cir.1990). The plaintiff must first establish a prima facie case by showing that (1) he was within the protected age group, (2) he was doing satisfactory work, (3) he was discharged, and (4) he was replaced by a younger person. MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d 1115, 1119 (10th Cir.1991). Once the plaintiff has established a prima facie case, the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for its action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The ultimate burden of proof remains with the plaintiff, however, who may meet the employer's proffered reasons directly with evidence of discrimination or indirectly with evidence that the employer's reason was a mere pretext for discrimination. Spulak, 894 F.2d at 1154.
 
 
 7
 In a recent decision, St. Mary's Honor Center v. Hicks, No. 92-602, 1993 WL 220265 (U.S. June 25, 1993), the Supreme Court elucidated and refined the plaintiff's burden of proof in a Title VII case, holding that once an employer meets its burden of production, the presumption of discrimination raised by the prima facie case drops out and plaintiff has the ultimate burden of proving that the employer's actions were not motivated by its proffered reasons, but by unlawful discrimination. Id. at * 5. Thus, the court concluded, the plaintiff cannot simply prove that the employer's proffered reasons for its action are false, but must offer evidence that the action was actually the result of unlawful discrimination. Id. at * 7; see also EEOC v. Flasher Co., 986 F.2d 1312, 1319 (10th Cir.1992) ("[P]laintiff must prove that the disparity in treatment was based upon the plaintiff's [minority status] rather than upon either a valid nondiscriminatory reason or upon no particular reason at all.").
 
 
 8
 In its order, the district court does not make any findings regarding whether it concluded that plaintiff established a prima facie case of age discrimination. However, it is undisputed that plaintiff is in the protected age group, that his work had been satisfactory, and that he was terminated. Therefore, the only element in question is whether a younger person was hired to replace plaintiff following his discharge.
 
 
 9
 Hercules states that plaintiff was an "engineer 5," which was the highest paid class of engineers employed by Hercules. Plaintiff presented evidence that Hercules continued to hire engineers after he was laid off, refused to consider him for rehire, and that several of those hired were younger than plaintiff. However, he failed to establish that anyone was hired in an "engineer 5" position or that anyone was hired to fill his particular position. The engineers hired after plaintiff was terminated, although admittedly younger than plaintiff, were hired in "engineer 2" and "engineer 3" positions. Hercules claims that not only were these positions lower in status and pay than the position previously held by plaintiff, but required advanced computer skills and recent "hands on" engineering experience which plaintiff lacked. Therefore, plaintiff's prima facie case falters on the fourth element.
 
 
 10
 However, even if we were to assume that plaintiff established a prima facie case, Hercules proffered legitimate, nondiscriminatory reasons for his layoff which plaintiff failed to rebut: the workforce reduction was a fiscal necessity; thirty-nine employees were laid off, focusing on those with the least seniority; and plaintiff's job was being eliminated with the elimination of the "Facilities Planning" group due to a lack of work in the facility planning area.[2] Plaintiff presented no evidence that these reasons advanced by Hercules were pretextual or that his age was an influencing factor in Hercules' decision. See Hicks, 1993 WL 220265, at * 7 (holding that a plaintiff not only has the burden of proving the employer's reasons were pretextual, but that discrimination was the real motivation). Therefore, the evidence presented by plaintiff is insufficient to raise a fact issue under the applicable standard, and Hercules is entitled to judgment as a matter of law on plaintiff's ADEA claim.
 
 ERISA Claim
 
 11
 The court also correctly granted summary judgment to Hercules on plaintiff's ERISA claim. Section 510 of ERISA prohibits employers from taking any action against an employee who participates in a pension benefits plan for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. Sec. 1140. In order to recover under this ERISA provision, plaintiff must show that Hercules had specific intent to interfere with plaintiff's pension benefits. See Phelps v. Field Real Estate Co., 991 F.2d 645, 649 (10th Cir.1993) (holding that a plaintiff is required to prove by a preponderance of the evidence that adverse action of employer was motivated by intent to interfere with ERISA-protected employee benefits); Gavalik v. Continental Can Co., 812 F.2d 834, 851 (3d Cir.), cert. denied, 484 U.S. 979 (1987) (holding that the evidence must be specific and must allow factfinder to find that one of the employer's motives was to violate ERISA).
 
 
 12
 Hercules contends that it was solicitous of the fact that plaintiff needed to remain employed for five years in order for his pension to vest and denies that its decision to terminate plaintiff was motivated by a desire to save the increase in pension which would accrue to plaintiff if he remained employed. It would appear that plaintiff is receiving a pension, albeit less than he might have received had he retired some time in the future. Contrary to plaintiff's assertion, the fact that he would have received a more generous pension if he had worked longer does not establish an intent on the part of Hercules to interfere with his pension benefits.
 
 
 13
 The courts may look to circumstantial evidence to prove intent, Phelps, 991 F.2d at 649, but here, plaintiff offered little more than speculation in an attempt to establish that Hercules intended to interfere with his pension benefits. Consequently, the district court also correctly granted summary judgment to Hercules on plaintiff's ERISA claim.
 
 
 14
 The judgment of the United States District Court for the District of Utah is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 At the time of oral argument on Hercules' motion for summary judgment, counsel for plaintiff stipulated to the dismissal of the state law claims
 
 
 [2]
 During the last period of plaintiff's employment with Hercules, he was apparently doing busy work such as writing poetry, memorizing Shakespeare, and other personal pursuits. Appellant's App. at 173-212. None of his work activities were chargeable to projects, but had to be absorbed by overhead